Filed 12/1/20; Certified for Publication 12/28/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| SAN JOAQUIN REGIONAL TRANSIT DISTRICT, | C084755 |
| Petitioner, | (Super. Ct. No. 39-2010-00252684-CU-EI-STK) |
| v. | |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | |
| Respondent; | |
| DSS-2731 MYRTLE LLC et al., | |
| Real Parties in Interest. | |

Beginning in 2005, petitioner San Joaquin Regional Transit District (District) began discussing with real parties in interest DSS-2731 Myrtle LLC and Sardee Industries, Inc. (Sardee) the possible acquisition through negotiated purchase or eminent domain of a two-acre parcel in Stockton on which Sardee operated a manufacturing

1

facility. Correspondence regarding appraisal of the property and Sardee's rights in eminent domain followed in 2008 and efforts to negotiate a purchase were undertaken but failed, leading to the filing of an eminent domain complaint in 2010. Thereafter, in April 2011 a stipulated order of possession gave legal possession of the parcel to District with a right of Sardee to occupy a portion of the property as it explored options for a new facility, to wind down its operations and to move elsewhere.

Ultimately, Sardee undertook to move its Stockton operations to its facility in Lisle, Illinois, which it upgraded to handle ongoing work from its Stockton plant. Under the stipulated order Sardee could occupy the property without charge until March 2012 and until June 30, 2012, by payment of rent. By March 2012 most of its equipment and operations had been relocated; the only machine items left in Stockton had been packed and were ready for shipment to Illinois. In April 2012 the District abandoned its condemnation action.

Following dismissal of the action, Sardee sought damages under Code of Civil Procedure section 1268.620,[1] which permits an award of damages under prescribed circumstances "after the defendant moves from property in compliance with an order or agreement for possession or in reasonable contemplation of its taking." (§ 1268.620.) District argued that complete physical dispossession of the property is a prerequisite to an award of damages under section 1268.620. Thus, the costs involved in closing down Sardee's Stockton facility and moving all but the items remaining for shipment in March could not be recovered. The trial court disagreed with this all-or-nothing interpretation of the statutory language and concluded Sardee should be permitted to present its damage claim to a jury, whereupon District filed its petition for writ of mandate, prohibition or

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

other appropriate relief and sought a stay of the damages trial. This court issued an order to show cause and stayed further proceedings.

Upon further consideration, the stay order issued by this court is vacated, the order to show cause heretofore issued is discharged, and the petition is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

**Sardee Industries**

Sardee is a manufacturing and service business. Sardee designs, manufactures, and installs packaging machinery and conveyor systems for the food and beverage industry. The company began operations in 1962 and is an internationally recognized business. The company operates out of three different plant locations, two of which are relevant here: Stockton, California and Lisle, Illinois (Sardee Stockton and Sardee Lisle). Sardee Stockton manufactures certain signature product lines, including equipment for bulk pallet handling and pallet emptying, packing equipment, and equipment used in production flow. Sardee Lisle manufactures more basic machinery and conveying systems, and offers installation and maintenance services to Sardee customers.

**Condemnation Action**

In 2005 District contacted Sardee about the potential acquisition of the Stockton property and the potential of an eminent domain action. Sardee received a notice of decision to appraise in October 2008, and considered this a sign District was serious about taking the Stockton property. In a December 2008 letter, District advised Sardee about its rights concerning reimbursement for relocation costs, loss of goodwill, and a relocation assistance program.

District's relocation agent contacted Sardee in December 2008 and January 2009 regarding the relocation process and District's need to access the property. The agent informed Sardee that District intended to take the property so it could expand its

operations. The agent and a District appraiser visited the Stockton property in January 2010.

Sardee received a letter from District regarding reimbursement of relocation and reestablishment expenses and the moving process in March 2010. In May 2010 District sent Sardee a purchase offer, proposed purchase agreement, appraisal summary statement, notice of eligibility for relocation assistance, information on the eminent domain process, and a loss of business goodwill notification. Sardee's attempt to negotiate the purchase price proved unavailing.

A resolution of necessity authorizing District to take the property was adopted in September 2010 and District filed its eminent domain complaint in November 2010. District made a deposit of probable just compensation in the amount of $1,624,125. The property consists of approximately two acres. The front portion of the property contained Sardee's manufacturing facility, office space, and engineering space. The rear portion was unimproved.

**Transfer of Possession to District**

District filed a motion for possession in December 2010, seeking possession of the property in four months. Sardee stipulated to possession, executed in April 2011, to secure a limited extended right of occupancy through March 2012, allowing the company to wind down its property operations and move them elsewhere.

On April 22, 2011, the court entered an order which provided that as of May 1, 2011, (1) District had legal possession of the property, (2) Sardee had the right to sole physical occupancy of the improved portion of the property "for the purpose of allowing" it "to continue its manufacturing operation," and (3) District had the right to sole physical occupancy of the unimproved portion of the property.

The stipulated order of possession transferred legal possession of the entire parcel to District on May 1, 2011, but reserved a limited right to Sardee to occupy the front

4

portion rent-free through March 31, 2012, with an option to extend through June 30, 2012, in exchange for a monthly rent of $6,500. Sardee was required to vacate the front portion of the property no later than June 30, 2012, under threat of ex parte writ of possession and a financial penalty.

Sardee fully vacated the back portion of the property by May 1, 2011, and District took physical possession of that portion of the property. Sardee characterizes the back of the property as integral to the company's operations for storage, truck turnaround, and housing dumpsters. According to Sardee, District's right of possession destroyed any opportunity for the firm to expand its facilities, undertake larger and more complex jobs, and operate its business normally.

In August 2011 Sardee proposed an amendment to allow a second option to extend occupancy through September 30, 2012, with increased rent. District rejected the amendment, but agreed to an extension to July 31, 2012.

**Sardee's Relocation Process**

After being contacted by District, Sardee reviewed its options and determined that quickly finding a build-to-suit site would not work. To complete the build-to-suit option without a transition facility, Sardee would have to shut down operations for five to six months, which would kill its business. Instead, Sardee decided to expand and upgrade Sardee Lisle to allow for the transition of Sardee Stockton's work and product lines to Sardee Lisle. Sardee was aware of its duty to mitigate and aware of the disruption to its manufacturing business at Sardee Stockton the move would cause. Sardee management explored options for a new facility from 2009 through 2011.[2] Ultimately, Sardee planned on moving the company to its Lisle facility on an interim basis.

---

[2] Sardee entered into a purchase agreement for a relocation property in Stockton on April 9, 2012, but did not close escrow because District abandoned its condemnation of the Sardee Stockton property.

5

Stockton had been a machine-building factory. Lisle focused on design and layout engineering and space planning for conveyor systems, manufacturing small parts for conveying systems, and installing conveying systems offsite at its customers' facilities. Lisle's business relied more on layout engineering and less on design engineering. It did not utilize machine-design engineers or involve electrics or pneumatics. As Sardee describes it: "One might analogize the contrasts between the Lisle and Stockton operations as building bicycles versus building Harley Davidsons or cars."

Lisle's facilities were less than half the size of the Stockton operation. Although smaller, Lisle was equipped to manufacture can conveyors, had shipping and receiving docks and storage areas, and a space for assembly and staging of assembled conveyor systems. However, Lisle required upgrading in several areas to be able to manufacture the Stockton product lines: manufacturing support equipment, floor space, processes of purchasing, engineering disciplines, and the ability to manufacture for higher tolerances and expertise in electrical wiring.

Sardee upgraded Lisle's facilities and moved Stockton's business to Lisle between January 2010 and March 2012.

**Procedural Background**

On April 24, 2012, District adopted a resolution abandoning its condemnation of the improved portion of the property where Sardee operated its business. On April 17, 2013, District adopted a resolution abandoning its condemnation of the unimproved portion of the property. The trial court dismissed the condemnation action, but retained jurisdiction over Sardee's section 1268.620 damage claim.

Following a court trial, the trial court issued a statement of decision. The court found Sardee entitled to damages under section 1268.620.

The court found that by April 23, 2012, Sardee had taken numerous actions as part of the move, had decided to expand Sardee Lisle to serve as an interim relocation site,

6

and took numerous steps in preparation for the relocation. On May 21, 2010, six months prior to the current action, Sardee sent the Sonoco conveyor project to Sardee Lisle. This was a big order for 10 balancers and Sardee was already deep into the project. Other projects were moved off the Sardee Stockton floor to focus on this job. Sardee had previously fulfilled such large orders, but never sent the end conveyor work to Sardee Lisle. Sardee Stockton completed the electrical control panel required for the Sonoco conveyor job and transferred responsibility for completing the job to Sardee Lisle.

In September 2010 the third Sardee location, in Orlando, Florida, sent the shear and brake divisions to Sardee Lisle. They were sent as part of the contingency plan for Sardee. There was a concern that without shear and brake, Sardee would not be able to complete projects if dispossessed of Sardee Stockton.

Sardee also sought extra space in the Chicago area for manufacturing its Sardee Stockton product lines. It sent its general manager and lead engineers to Sardee Lisle to enable the transition from Sardee Stockton to Sardee Lisle. Sardee trained Sardee Lisle employees to perform numerous functions previously exclusively performed by Sardee Stockton.

As of January 1, 2010, Sardee leased about 9,800 square feet of space at Sardee Lisle. By November 2010, it increased the leased square footage to 15,000 square feet to accommodate the transition. The additional space would accommodate moving manufacturing lines from Sardee Stockton to Sardee Lisle. In November 2010 Sardee installed a paint booth at Sardee Lisle and moved auxiliary painting components. Sardee hired an electrical apprentice to perform electrical work in Sardee Lisle that had previously been performed by Sardee Stockton.

In 2011 Sardee sent an end conveyor project, a can cleaner project, a cork and seal project, and a magnetic wheel project to Sardee Lisle. By mid-2011 jobs previously performed exclusively by Sardee Stockton could be and were performed by Sardee Lisle.

In November 2011 computer systems at Lisle were upgraded so that Sardee Stockton's engineering and purchasing work could be moved to Sardee Lisle. Sardee made a deposit, negotiated a lease, and began demolition on additional space, doubling the size of the Sardee Lisle property.

In March 2012 Sardee Lisle began building the Bush Brothers' bright stacker, a major product. The project formed a large part of Sardee's good reputation. But for the District's actions, the Bush Brothers' bright stacker would have been built at Sardee Stockton. Sardee also sent an electrical control panel for another Bush Brothers project, which would have been manufactured and completed at Sardee Stockton, to Sardee Lisle. The court noted that the only items left in Sardee Stockton were the last machines of an order referred to as the Rexum jobs and these machines were packed up and ready for shipment.

Subsequently, District filed a petition for writ of mandate and stay of trial. Sardee filed a return by answer.

## DISCUSSION

### Section 1268.620

Section 1268.620 provides: "If after the defendant moves from property in compliance with an order or agreement for possession or in reasonable contemplation of its taking by the plaintiff, the proceeding is dismissed with regard to that property for any reason . . . the court shall: [¶] (a) Order the plaintiff to deliver possession of the property to the persons entitled to it; and [¶] (b) Make such provision as shall be just for the payment of all damages proximately caused by the proceeding and its dismissal as to that property." (§ 1268.620.) Here we focus on the phrase "after the defendant moves from property."

**Trial Court's Decision**

In its statement of decision, the trial court noted section 1268.620 does not use the term "physically dispossessed" and that dispossession logically encompasses legal dispossession based on an order or agreement for possession. The court found, under the facts before it, physical dispossession is not a requirement of entitlement to an award under section 1268.620.

The trial court explained the foundation for its determination that Sardee had moved from the property: "Sardee was physically dispossessed because [District] had taken physical possession of the northern portion of the parcel, and Sardee was paying rent to [District]. No taxes were being imposed by the County Tax Assessor. Further, Sardee had physically moved almost everything it needed to move from Stockton to Lisle to perform all of Sardee Stockton's manufacturing operations in Lisle. The Sardee Stockton facility on the southern portion of the parcel was almost empty. [District's] counsel even concedes that Sardee 'did have to spend money in preparing to move, in preparing for a transition. There is no doubt about that.' Sardee did more than just prepare. Sardee was well into the process of moving, and was almost done. [¶] The facts of this case show that the differing manufacturing and service operations of Sardee were separated in Stockton and in Lisle. A business consists of tangibles and intangibles. Under the facts of this case, and applying . . . section 1268.620 to Sardee's particular situation, its business is not just equipment, but also its operations, which concern, among other services, its ability to design, engineer, and manufacture its signature product lines. Sardee took the steps necessary to move its operations so it could design, engineer, and manufacture its signature product lines at Sardee Lisle."

**Physical Dispossession of a Property**

District argues the trial court erred in finding that complete physical dispossession of the property is not a prerequisite to an award of damages under section 1268.620.

9

According to District, the language of the statute "after the defendant moves from" requires physical dispossession. In support, District cites *Los Angeles Unified School Dist. v. Trump Wilshire Associates* (1996) 42 Cal.App.4th 1682 (*Trump*). District contends the trial court incorrectly found *Trump* distinguishable.

In *Trump*, a school district filed an eminent domain action seeking to acquire a portion of a 23-acre plus parcel on which sat the previously closed Ambassador Hotel. Trump Wilshire Associates (Trump Wilshire) had recently acquired the site and was in the early stages of redeveloping the hotel. At the time the eminent domain action was filed, Trump Wilshire had set a planning schedule, prepared development budgets, and started an environmental assessment. After the filing of the eminent domain action, these efforts ceased and the development staff moved from the property. Subsequently, Trump Wilshire only used the property for short-term parking and film shoots, which provided enough income for Trump Wilshire to report a loss for tax purposes. (*Trump, supra*, 42 Cal.App.4th at p. 1685.)

The school district deposited approximately $48 million into court as the amount of probable compensation under section 1255.010. Trump Wilshire moved to strike the deposit on the ground it had been illegally transferred from the school district's workers' compensation insurance fund. When this failed, Trump Wilshire applied to withdraw the funds in order to pay off its lender, and subsequently withdrew the $48 million deposit for the benefit of its lender. At first, the lender objected to the withdrawal of funds due to concerns about the possibility the school district would look to it for repayment if the condemnation action were abandoned. The lender's apprehension stemmed from a Trump Wilshire's counsel's statement to the press that Trump Wilshire would seek $200 million as the fair market value of the property and force the school district to abandon the condemnation proceeding. (*Trump, supra*, 42 Cal.App.4th at pp. 1685-1686.)

To assuage these concerns, the parties entered into a stipulation that provided the school district would not seek to recover from the lender in case of abandonment and also

10

provided in the event the school district served a notice of abandonment pursuant to section 1268.510, subdivision (a), judgment would be entered to dismiss the proceeding and that the school district would be entitled to repayment from Trump Wilshire of the total amount of the deposit less any costs Trump Wilshire would be entitled to under sections 1268.610 and 1268.620. (*Trump, supra*, 42 Cal.App.4th at p. 1686.)

A few years later, with little in the way of progress, Trump Wilshire moved for an order compelling the school district to take the property under section 1255.460. The court denied the motion. Subsequently, the school district filed a notice of abandonment. Trump Wilshire moved to set aside the abandonment, arguing it had suffered detriment by withdrawing its deposit and ceasing all development efforts. The school district opposed the motion on the ground there was no evidence of detrimental reliance. The trial court found for the school district. After entry of judgment in the school district's favor, Trump Wilshire sought compensation under section 1268.620, arguing it had effectively moved from the hotel site. The court denied the motion. Trump Wilshire appealed on both grounds and the Court of Appeal affirmed the judgment. (*Trump, supra*, 42 Cal.App.4th at pp. 1687-1688, 1693.)

Here, the trial court carefully considered *Trump* and noted Trump Wilshire's right of possession was never threatened, nor could it be said that Trump Wilshire was dispossessed either legally or physically. In contrast, Sardee did not pursue the remedy of forcing the taking. District received an order of possession, had taken possession of the northern portion of the property, and continued to move forward with taking the property. In contrast, there was ample evidence in *Trump* of an uncertainty there would be a taking. "[T]he only thing Trump Wilshire did was put its development plans on hold. There was nothing to move but a meager development staff who had barely begun preliminary work."

The trial court also addressed District's argument that under *Trump*, in order to qualify for damages an eminent domain defendant must be completely moved from the

11

property. The *Trump* court cited to the Law Revision Commission's Comment that " '[s]ection 1268.620 provides *for restoration of possession of the property* and damages *where the defendant was dispossessed from property* prior to a dismissal or a final judgment that the plaintiff cannot acquire the property.' " (*Trump, supra*, 42 Cal.App.4th at p. 1692.) The *Trump* court continued: "The legislative intention that the remedies available under section 1268.620 be applied only to parties who have been physically disposed is confirmed by the Report on the Subcommittee on Eminent Domain, which stated when enacting the present version of the statute in 1975: 'Where the condemnor takes possession of property to be condemned and subsequently abandons the condemnation action, the condemnor must redeliver possession of the property and pay damages arising out of its taking and use of the property, along with damages for any loss or impairment of value suffered by the land and improvements.' " (*Ibid.*)

The trial court found *Trump* inapplicable to the facts before it. In *Trump*, Trump Wilshire never had to move, but just put its development plans on hold. Nor did Trump Wilshire ever change its position throughout the litigation by buying other property or developing the remainder of the parcel not subject to the taking. In contrast the trial court noted: "[District] made repeated declarations that it was not abandoning its action. [District] had its Order of Possession, Sardee had spent several years setting up the interim site in Lisle for Sardee Stockton's manufacturing work, had located a relocation site in Stockton, and had moved equipment and begun carrying out Sardee Stockton's manufacturing functions in Lisle. [District] had refused Sardee's request for extra time to September 30, 2012. Sardee had to be out, and it affirmatively altered its position according to [District's] representations and actions."

We agree with the trial court. *Trump* did not provide an extensive analysis of what constitutes a "move" sufficient to invoke section 1268.620. The *Trump* court rejected Trump Wilshire's claim that it was effectively dispossessed of the property because it was unable to proceed with its development plans. The *Trump* court concluded:

12

"Throughout the litigation and despite its efforts to transfer possession to the District in 1993, Trump Wilshire continued to exercise ownership control over the property and to derive substantial income from it." (*Trump, supra*, 42 Cal.App.4th at p. 1693.) We do not find *Trump*'s brief reference to section 1268.620 applying to "parties who have been physically dispossessed" supports District's assertion that the statute requires a complete move of all items from the property in question. (*Trump*, at p. 1692.)

We note section 1268.620 does not use the term "physically dispossessed," it only states the party must "move[ ] from" the property. When interpreting a statute, the plain language of the statute governs. We give the words their usual and ordinary meaning. Absent ambiguity in the language, we presume the Legislature meant what they said. (*Heidi S. v. David H.* (2016) 1 Cal.App.5th 1150, 1173.) The question becomes, did Sardee move from the property, not was Sardee completely physically dispossessed from the property.

District argues Sardee had not moved within the meaning of the statute "because it had exclusive rights to physically occupy the portion of the Property where it operated its Stockton facility, it did occupy the portion of the Property where it operated its Stockton facility, and it continuously operated its business there. As long as Sardee continued to operate its business on the Property, a fact confirmed by Sarovich's April 20, 2012 e-mail, there's no basis for finding that it moved from the Property."[3]

The trial court disagreed, finding: "Sardee was physically dispossessed because [District] had taken physical possession of the northern portion of the parcel, and Sardee was paying rent to [District]. No taxes were being imposed by the County Tax Assessor.

---

[3] In an e-mail dated April 20, 2012, Sardee owner Steven Sarovich stated that the "beginning of the move-out is currently scheduled for Friday July 6, 2012 and to be completed by July 31, 2012." The e-mail also listed items still to be removed from the property including substantial raw materials, work in process, shipping and crating supplies, painting supplies, and stockroom supplies.

13

Further, Sardee had physically moved almost everything it needed to move from Stockton to Lisle to perform all of Sardee Stockton's manufacturing operations in Lisle. The Sardee Stockton facility on the southern portion of the parcel was almost empty. [District's] counsel even concedes that Sardee 'did have to spend money in preparing to move, in preparing for a transition. There is no doubt about that.' Sardee did more than just prepare. Sardee was well into the process of moving and was almost done."

The court also noted "it was impressed with the honesty, integrity and professionalism of the Sardee owners/partners/employees in the face of [District's] actions. The court can imagine organizations with less integrity attempting to take advantage of such a situation. Sardee did not take advantage or abuse its position, in the court's view. It acted at all times in an exemplary fashion. This ultimately inures to the benefit of [District], both economically and otherwise."

In brief, the court carefully considered the evidence surrounding the condemnation action and Sardee's efforts to relocate. Sufficient evidence supports the court's finding that Sardee had moved from the property, supporting application of section 1268.620.

District contends the court's decision did not address the April 20 e-mail. However, the court noted that District's counsel "astutely, thoroughly, and very carefully went through claimed damages by Sardee in an effort to show that some of the damages were incurred after RTD abandoned the taking on April 24, 2012. While allowed to do so in the entitlement phase, as it was arguably relevant to whether a move was underway, the court notes much if not all of this evidence is more appropriate in the next phase before the jury."

14

## DISPOSITION

Having served its purpose, the order to show cause is discharged and the petition for writ of mandate is denied.  The stay order previously issued by this court is vacated. Sardee shall recover its costs in this proceeding.  (Cal. Rules of Court, rule 8.493(a)(1)(A).)


                                        /s/
                                   RAYE, P.J.



We concur:



     /s/
ROBIE, J.



     /s/
MURRAY, J.


15

Filed 12/28/20

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| SAN JOAQUIN REGIONAL TRANSIT DISTRICT, | C084755 |
| Petitioner, | (Super. Ct. No. 39-2010-00252684-CU-EI-STK) |
| v. | |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | |
| Respondent; | |
| DSS-2731 MYRTLE LLC et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING in mandate. Linda L. Lofthus, Judge. Petition denied.

Freeman Firm, Arnold J. Wolf and Thomas H. Keeling for Petitioner.

No appearance for Respondent.

Desmond, Nolan, Livaich & Cunningham, Gary Livaich, Brian Manning and Kristen Ditlevsen Renfro for Real Parties in Interest.

1

THE COURT:

The opinion in the above-entitled matter filed December 1, 2020, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

_____/s/_____
RAYE, P. J.

_____/s/_____
ROBIE, J.

_____/s/_____
MURRAY, J.

2